03MBD10408

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

FILED
CLERKS OFFICE

2003 DEC 19 A 10: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

| In re:<br><br>ESTATE OF JANET G. ROSOL and RAYMOND R. ROSOL,<br><br>  Plaintiffs<br><br>v.<br><br>R.J. REYNOLDS TOBACCO COMPANY,<br><br>  Defendant | Pending in:<br><br>THE UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF IOWA<br>EASTERN DIVISION<br><br>No. 99-2089 EJM |
|---|---|

## MOTION OF TOBACCO CONTROL RESOURCE CENTER, INC. TO QUASH SUBPOENA DUCES TECUM

Now comes Tobacco Control Resource Center, Inc. (TCRC), a Massachusetts charitable corporation and moves to quash the subpoena duces tecum served upon it, a copy of which is attached hereto as Exhibit A. In support of this motion, TCRC relies upon its memorandum of law filed herewith, together with affidavits of its Executive Director, Kevin Kroner and E. Ralph Walker, Esquire, counsel for the plaintiff.

By its attorneys,

_[signature]_
Jeffrey S. Stern, (BBO No. 479460)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030

341046

## CERTIFICATE OF SERVICE

I, Jeffrey S. Stern, hereby certify that on the above date I served the within document by mailing a copy of same, postage prepaid, to the following counsel of record:

J. Todd Kennard, Esquire
Jones Day
41 South High Street, Suite 1900
Columbus, OH 43215-6113

E. Ralph Walker, Esquire
Walker Law Firm, P.C.
2501 Grand Avenue, Suite E
Des Moines, Iowa 50312

Erin H. Higgins, Esquire
Conn Kavanaugh Rosenthal Peisch
& Ford, LLP
Ten Post Office Square
Boston, MA 02108

_____
Jeffrey S. Stern

341046



IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

2003 DEC 19  A 10: 58

| In re:<br><br>ESTATE OF JANET G. ROSOL and RAYMOND R. ROSOL,<br><br>Plaintiffs<br><br>v.<br><br>R.J. REYNOLDS TOBACCO COMPANY,<br><br>Defendant | Pending in:<br><br>U.S. DISTRICT COURT<br>DISTRICT OF MASS.<br>THE UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF IOWA<br>EASTERN DIVISION<br><br>No. 99-2089 EJM |
|---|---|

## MEMORANDUM OF TOBACCO CONTROL RESOURCE CENTER, INC. (TCRC) IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA DUCES TECUM

INTRODUCTION

Tobacco Control Resource Center, Inc. (TCRC), a Massachusetts charitable corporation, has received a subpoena duces tecum to produce certain documents. The underlying lawsuit, pending in U.S. District Court for the Northern District of Iowa, seeks recovery for the wrongful death of Janet G. Rosol against R.J. Reynolds Tobacco Company. It is one of many cases pending against one or more tobacco companies for injuries or death arising from use of tobacco products. Since TCRC is an organization whose principal purpose is to combat tobacco-caused disease and death, it strongly opposes this attempt by R.J. Reynolds to use legal process for the purpose of a window into TCRC's activities. Moreover, and particularly in the context in which it occurs, the subpoena is clearly an effort to bypass well-established principles of work product privilege. The factual and legal bases for TCRC's opposition is set forth below.

## ARGUMENT

I. THE ORIGIN OF THE CONDITIONAL WORK PRODUCT PRIVILEGE IS PROTECTING THE THOUGHT PROCESSES OF LAWYERS, WHICH THIS DEPOSITION SUBPOENA INVADES

In the seminal case of *Hickman v. Taylor*, 329 U.S. 495 67 S.Ct. 385 91 L. Ed. 451 (1947) the court said ... "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their client's interest." 329 U.S. at 510-511. It is precisely that principle which was written into Federal Rule 26(b)(3).

The Supreme Court has consistently reaffirmed the "strong public policy" supporting the work product doctrine. *Upjohn Company v. United States*, 449 U.S. 383, 399 101 S.Ct. 677, 687 (1981), *United States v. Nobles*, 422 U.S. 225, 236-40, 95 S.Ct. 2160, 2169-2171 (1975). The court has also recognized the doctrine as "an intensely practical one, grounded in the realities in litigation in an adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilations of materials in preparation for trial it is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. at 225, 238-39, 95 S.Ct. at 2170.

2

In a case involving the present defendant, as well as the jurisdiction of Iowa where this case is pending, R.J. Reynolds sought to obtain certain documents sent by plaintiff's counsel to testifying experts. When the plaintiff objected, the defendant moved to compel production. In denying the motion, the federal court in Iowa said:

> Opinion work product "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." (Citation omitted). *Estate of Phillip P. Chopper, et al v. R.J. Reynolds Tobacco Company, et al.*, 195 FRD 648, 650 (N.D. Iowa, 2000).

The court went on to hold that the "nearly absolute immunity" is not compromised by sharing such work product with experts.

Massachusetts courts have expressed similar views. In a very recent case in this district, the court reaffirmed the "special treatment for opinion work product" citing *U.S. v. Nobles, opp. cit.* In re *Raytheon Securities Litigation*, 2003 W.L. 22794403 (D.Mass.). In discussing waiver, the *Raytheon Securities* court said the following:

> In determining whether a disclosure is fatally inconsistent with maintaining the privilege, the existence of "common interest" between the transferor and transferee should be considered (citation omitted). Most courts have held that disclosure of a document to third persons does not waive the protection unless it substantially increased the opportunities for potential adversaries to obtain the information."

As noted below, TPLP goes to great lengths to protect its conferences and its conference materials from being disclosed to its opponents, the tobacco companies. Thus, both in its intent, and in its procedures, TPLP and its participants are engaged in

3

precisely the sort of activities that the work product privilege is designed to protect. The fact that different lawyers, involved in separate cases, converse with each other in no way constitutes any sort of waiver.

To fully appreciate the prejudicial effect that enforcement of this subpoena would promote, it is necessary for the court to understand something of the history and structure of TCRC. To that end, we have supplied the court with an affidavit from its executive director, Kevin Kroner. TCRC works in a number of legal avenues in its fight against the tobacco interests. One of the most important, and most visible, is its Tobacco Products Liability Project. The founder and president of TCRC, and also the chairman of TPLP is Professor Richard Daynard of Northeastern Law School. Professor Daynard has also acted, personally, as counsel in a number of tobacco-related cases, both on behalf of individuals, as well as states attorneys general. The purpose of TPLP conferences is to provide a venue for the anti-tobacco community to gather, exchange information and to strategize. In this case, plaintiff's counsel E. Ralph Walker personally attended the 20th conference including meetings of the Tobacco Trial Lawyers Association (TTLA). TTLA is a co-sponsor of the meeting. Affidavits from Attorney Walker and from the Executive Director of TCRC establish that the TPLP conference is a private gathering of the anti-tobacco community. It requires an affidavit from all participants that they are not affiliated with any tobacco company.

The subpoena at issue in the present case (attached as Exhibit A to the present motion) arose in the following context. Dr. Alan Feingold, one of the plaintiff's experts expected to testify, was deposed by defendant's counsel, Jay Todd Kennard of Jones, Day. In discovery related to Dr. Feingold's deposition, defense counsel requested, and

4

Dr. Feingold agreed to produce, a copy of his presentation at the 20th Conference of the Tobacco Products Liability Project ("TPLP"), which is an unincorporated project of TCRC. At the same time, Attorney Kennard requested the documents which Dr. Feingold received at the conference. Plaintiff's counsel declined to produce those on work product ground, among other grounds. His position is set forth in a letter attached to the affidavit of E. Ralph Walker, filed in support of this motion.

This procedural history demonstrates the inextricable linkage between the activities of TPLP, and particularly its annual conferences, and the ability and desire of lawyers (in this case plaintiff's lawyers) to engage in strategic thinking. That is precisely the problem with this subpoena.

This court should not countenance the efforts of R.J. Reynolds to use the current subpoena to invade the interest which Rule 26(b)(3) seeks to protect.

II.  **TO ENFORCE THE SUBPOENA WOULD VIOLATE PUBLIC POLICY, BY UNDERMINING THE EFFORTS OF AN ORGANIZATION DEVOTED TO AN IMPORTANT PUBLIC HEALTH ISSUE.**

While the work product privilege alone amply justifies the allowance of this motion, the court additionally consider the public policy implications of the subpoena. As is well known, tobacco use, promoted by R.J. Reynolds and other tobacco companies, is a public health scourge in this country and a leading cause of preventable deaths from cancer, heart disease and stroke. While this court need not "take sides" in the fight between TCRC and the tobacco companies, it should certainly recognize that the former is a sworn enemy of the latter. TCRC goes to great lengths to hold its strategy sessions in private through use of affidavits and other means. R.J. Reynolds should not be allowed, by means of this subpoena, to "crash the party." American democracy since the

5

beginning of our history, has been enriched by advocacy groups working for various causes, often in opposition to other groups. It would violate all principles of freedom of association if a court were to require that TPLP open the door of its meetings to R.J. Reynolds and other tobacco companies. Enforcement of this subpoena would accomplish precisely that same goal.

CONCLUSION

For the reasons set forth above the motion of TCRC to quash the subpoena duces tecum should be allowed.

Respectfully submitted,
By its attorneys,

_____
Jeffrey S. Stein, (BBO No. 479460)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030

DATED: December 18, 2003

## CERTIFICATE OF SERVICE

I, Jeffrey S. Stern, hereby certify that on the above date I served the within document by mailing a copy of same, postage prepaid, to the following counsel of record:

J. Todd Kennard, Esquire
Jones Day
41 South High Street,. Suite 1900
Columbus, OH  43215-6113

E. Ralph Walker, Esquire
Walker Law Firm, P.C.
2501 Grand Avenue, Suite E
Des Moines, Iowa 50312

Erin H. Higgins, Esquire
Conn Kavanaugh Rosenthal Peisch
& Ford, LLP
Ten Post Office Square
Boston, MA  02108

_____
Jeffrey S. Stern

341040