IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

C.A. No. 03-MC-10408-RGS

| | |
|---|---|
| ESTATE OF JANET G. ROSOL, by her executor, Raymond R. Rosol, and RAYMOND R. ROSOL,<br><br>Plaintiffs,<br><br>vs.<br><br>R.J. REYNOLDS TOBACCO COMPANY,<br><br>Defendant. | Pending in:<br><br>United States District Court<br>Northern District of Iowa<br>Eastern Division |

**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S OPPOSITION TO
TOBACCO CONTROL RESEARCH CENTER, INC.'S
MOTION TO QUASH SUBPOENA DUCES TECUM**

**I.    INTRODUCTION**

Tobacco Control Research Center, Inc. ("TCRC") is a self-declared "sworn enemy" of tobacco companies and "works in a number of legal avenues [to] fight against the tobacco interests." (TCRC Br. at 4, 5). According to TCRC, one of its most important legal avenues in this fight is the Tobacco Products Liability Project ("TPLP"), an unincorporated project of TCRC, and the annual conferences sponsored by TPLP. Id. at 4. Only members of the "anti-tobacco community" are allowed to attend TPLP conferences because the attendees discuss "strategies to use in fighting large tobacco companies." (TCRC Br., Kevin Kroner Aff. at 2). In fact, in order to attend the conferences, "all attendees are required to sign an affidavit indicating they have no affiliation with any tobacco company." Id.

Three of plaintiffs' experts in <u>Rosol v. R.J. Reynolds Tobacco Company</u> ("<u>Rosol</u>"), the underlying lawsuit pending in the United States District Court for the Northern District of Iowa, attended and made presentations at the 20th Conference of the Tobacco Products Liability Project (the "Conference") recently held in Boston. Reynolds served a subpoena on TCRC requesting all Conference materials provided to the attendees of the Conference and all Conference materials relating to the <u>Rosol</u> plaintiffs' experts. Under the Federal Rules, Reynolds is entitled to the subpoenaed materials in order to prepare an effective cross-examination of these witnesses for trial. Because the experts were presenters at an anti-tobacco conference that "encourag[es] litigators to sue tobacco companies," the materials are relevant to the credibility of the <u>Rosol</u> plaintiffs' experts and the weight that a jury in Iowa should give to these witnesses' testimony.

TCRC has moved to quash this subpoena. But TCRC has cited no authority to support its position that the subpoenaed materials are protected work product. Indeed, TCRC's motion to quash fails on multiple grounds. Although TCRC has the burden of establishing that the materials are protected work product, TCRC has not identified the basis of the alleged privilege as required by applicable law. This failure alone requires dismissal of TCRC's motion to quash. TCRC's motion also fails because plaintiffs' counsel in <u>Rosol</u> cannot plausibly claim privilege over the documents sought in the subpoena. Nor has TCRC identified any other attorneys who can claim that the requested materials are work product. Furthermore, even if the materials were protected work product, TCRC has waived the privilege on multiple occasions.

## II.  <u>BACKGROUND</u>

Reynolds is the only defendant in <u>Rosol v. R.J. Reynolds Tobacco Company</u>, a wrongful death action brought by the estate of Janet G. Rosol and her husband. The <u>Rosol</u> plaintiffs have brought multiple causes of action against Reynolds, including negligence, fraudulent misrepresentation and nondisclosure, breach of express and implied warranties, and civil

2

conspiracy, among others. The <u>Rosol</u> plaintiffs also seek an undisclosed amount in punitive damages.

To support their claims, the <u>Rosol</u> plaintiffs have hired over a dozen expert witnesses, three of whom are relevant to the issue at hand: (1) Dr. Allan Feingold; (2) Mr. Robert Johnson; and (3) Dr. Louis Kyriakoudes. <u>See</u> <u>Rosol</u> Plaintiffs' Supplemental and Amended Disclosure of Expert Witnesses, Sept. 2, 2003, copy attached at Tab 1 to Affidavit of Elizabeth P. Kessler (Exhibit A). Dr. Feingold is a pulmonologist whom the <u>Rosol</u> plaintiffs expect to testify concerning the "addictive properties of nicotine and smoking," "the health effects of cigarette smoking," and the "effects of smoking on Mrs. Rosol." <u>See</u> Tab 1 to Kessler Aff. Plaintiffs also expect Dr. Feingold to testify on the "public awareness of the health risks of smoking, youth smoking and targeting, [and] the tobacco companies' conduct, knowledge and research," despite the fact that these subjects are far beyond Dr. Feingold's area of expertise. <u>Id.</u> Mr. Johnson is an economist and is expected to testify concerning punitive damages issues. <u>See id.</u> Dr. Kyriakoudes is a historian whom the plaintiffs in <u>Rosol</u> have indicated will testify regarding the history of the public's awareness of the health risks of smoking. <u>See id.</u>

Dr. Feingold, Mr. Johnson, and Dr. Kyriakoudes all attended and presented at the TPLP Conference. The Conference was held September 19 through September 21, 2003, in Boston and outlined in detail how to successfully sue tobacco companies. <u>See</u> Conference Agenda at http://tobacco.neu.edu/conference/20th/index.html, printed on Nov. 19, 2003, attached at Tab 5 to Kessler Aff.; <u>see also</u> Feingold dep. at 43-45, attached at Tab 6 to Kessler Aff.; Johnson dep. at 40-43, attached at Tab 7 to Kessler Aff. According to TCRC's website, the Conference addressed the following topics, among others: keys for winning cases against tobacco companies like Reynolds, updates on the newest tobacco litigation strategies, the use of experts and

evidence to create the best advantages, and the sharing of "critical" resources. See Tab 5 to Kessler Aff. Plaintiffs' counsel in the Rosol case also attended the Conference. (TCRC Br. at 4). Dr. Feingold and Dr. Kyriakoudes both admitted to signing affidavits before attending the Conference, in which they agreed that, because the Conference was intended to encourage litigation against tobacco companies, the experts would not reveal what they learned at the Conference to any person working for a tobacco company. (Feingold dep. at 60-65, attached at Tab 6 to Kessler Aff.; Kyriakoudes dep. at 20-21, 42-45, attached at Tab 8 to Kessler Aff.).

Because these expert witnesses attended and made presentations at a conference sponsored by an organization that openly acknowledges using a "strategic approach to battling the tobacco epidemic by encouraging litigators to sue tobacco companies,"[1] Reynolds requested that the experts bring the following materials, among others, to their respective depositions: (1) "All documents, reports, notes, e-mails, slides, powerpoint presentations, or studies that [the expert] reviewed or received in connection with the 20th Conference of the Tobacco Products Liability Project held in Boston, Massachusetts, September 19 through September 21, 2003 or any similar conference [the expert] has ever attended;" and (2) "A list of attendees at the 20th Conference of the Tobacco Products Liability Project." See Feingold Notice of Dep., attached at Tab 2 to Kessler Aff.; Johnson Notice of Dep., attached at Tab 3 to Kessler Aff.; Kyriakoudes Notice of Dep., attached at Tab 4 to Kessler Aff.

These deposition notices were served with no objection by plaintiffs' counsel. See Kessler Aff. at ¶¶ 3-5. However, despite Reynolds' legitimate requests and plaintiffs' counsel's silence on the issue, only one of plaintiffs' experts, Dr. Kyriakoudes, has provided Reynolds with any of the materials that the Conference gave to him. Dr. Feingold, in fact, has refused to

---

[1] See TCRC website at http://tobacco.neu.edu/conference/20th/index.html, printed on Dec. 30, 2003, attached at Tab 9 to Kessler Aff.

4

produce the Conference materials that he received on the basis that he signed an affidavit before he attended the Conference in which he promised that he would not release the materials to any tobacco company. See Feingold dep. at 60-71, Tab 6 of Kessler Aff. Although Dr. Feingold stated in his deposition in Rosol that he believed that he had the Conference materials in his office at the time of his deposition, he would not agree to retain the materials, simply stating that he had "no need to or not to" destroy them. Id. at 52-53. Almost two months after the deposition, following further requests by Reynolds for the Conference materials, plaintiffs' counsel informed Reynolds that "although Dr. Feingold's office apparently received some [Conference] materials, my understanding is that his staff subsequently discarded them." See Tab 10 to Kessler Aff. Aside from a single Conference notebook Dr. Kyriakoudes gave to Reynolds, the Rosol experts have not provided Reynolds with any of the materials supplied to them at the Conference.[2]

As explained below, Reynolds is entitled to these materials in order to prepare an effective cross-examination of these expert witnesses for trial in Rosol. Reynolds is entitled to the materials in order to determine the influence that counsel and other attendees may have had on the experts while they attended the Conference. Reynolds is also entitled to the materials in order to determine the extent of each witness' bias against tobacco companies and partiality towards the anti-tobacco community and to present that information to the Rosol jury. See United States v. Abel, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because

---

[2] Because TCRC's brief only addresses Reynolds' attempt to obtain the Conference materials from Dr. Feingold, Reynolds focuses on this issue. However, with the exception of the one Conference notebook that Dr. Kyriakoudes provided to Reynolds and the materials that the experts themselves created for the Conference, the Rosol plaintiffs' experts have failed to produce the Conference materials requested in their respective deposition notices. Reynolds has not received any of the of the Conference materials given to Dr. Feingold or Mr. Johnson. Neither Dr. Feingold nor Dr. Kyriakoudes has provided Reynolds with the affidavits they signed before attending the Conference. At his deposition, Mr. Johnson denied signing an affidavit, although it appears all other attendees were required to sign one in order to participate. (Johnson dep. at 42-43, attached at Tab 7 to Kessler Aff.). Furthermore, none of the experts has provided a list of attendees from the Conference, as requested in their deposition notices.

the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of the witness' testimony.").

The subpoenaed materials are undoubtedly relevant considering the way that the Conference itself characterized these experts;[3] for example, the Conference touted Mr. Johnson as "one of the founders of the field of forensic economics" who "was involved in 3 of the largest individual punitive damages awards in tobacco litigation." See Tab 5 to Kessler Aff. Despite numerous attempts, Reynolds has only been able to obtain certain of the Conference materials sought in the subpoena to TCRC through the expert witnesses in Rosol. Accordingly, Reynolds is entitled to acquire the remaining Conference materials identified in the subpoena.

### III. ARGUMENT

#### A. TCRC's Motion Should Be Denied Because TCRC Fails To Specify The Basis of Its Assertion of Work Product Privilege.

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." Von Bulow v. Von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); see also In re Raytheon Secs. Litig., 2003 U.S. Dist. LEXIS 21212, *6 (D. Mass.) ("The party invoking a recognized privilege has the burden of establishing . . . the existence of that privilege.") (attached as Exhibit B); Amica Mut. Ins. Co v. W.C. Bradley Co., 217 F.R.D. 79, 82 (D. Mass. 2003) ("The burden is on the party resisting discovery to establish that the documents are protected work product."); In re Grand Jury Subpoena, 615 F. Supp. 958, 964 (D. Mass. 1985) ("[T]he persons claiming a privilege must

---

[3] TCRC has made no argument that the subpoenaed materials are irrelevant; nor could they since the Conference materials relate to a number of important issues, including the experts' biases, the sources of the experts' opinions, and those matters that influenced the experts' opinions. See Weil v. Long Island Sav. Bank FSB, 206 F.R.D. 38, 41 (E.D.N.Y. 2001) ("Given the importance that expert testimony can assume, 'a jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility.'") (internal citations omitted); Musselman v. Phillips, 176 F.R.D. 194, 201 (D. Md. 1997).

6

establish the elements or [sic] privilege as to each record sought and each question asked so that . . . the Court can rule with specificity.") (internal citations omitted).

    TCRC has failed to meet this burden. In particular, TCRC completely fails to explain who is asserting the privilege and on what specific basis this alleged privilege rests. Indeed, TCRC's motion and memorandum fail to address this necessary linkage in TCRC's work product argument. In <u>Digital Equipment Corp. v. Currie Enterprises</u>, this Court addressed a similar failure by a party asserting a work product privilege. See 142 F.R.D. 8 (D. Mass. 1991). In that case, a party objected to the production of certain documents on the basis of the attorney-client privilege and the work product doctrine. See <u>id.</u> at 15. However, this Court found no privilege, holding that the claimed privileges "were not supported with adequate specificity." See <u>id.</u> In explaining its decision, this Court stated that the party failed to meet his burden of establishing the privileges because "[h]e merely state[d] that 'among the documents' requested . . . [were] documents protected by the attorney-client privilege and the work product doctrine." <u>Id.</u> Accordingly, the party "faile[d] to identify the basis for his assertion of the attorney-client privilege or work product doctrine sufficiently to permit judicial resolution." <u>Id.</u>

    The same applies here. TCRC's brief fails to identify an attorney allegedly entitled to assert the work product privilege. The brief also fails to identify any agent who allegedly prepared the requested materials for the holder of the privilege. TCRC has not even provided this Court with a privilege log in order for the Court to have some starting point in determining whether the contents of the subpoenaed documents could be considered protected work product. Because TCRC has made an assertion of privilege without setting forth the elements of the alleged privilege, TCRC has not even come close to meeting its burden of proof under the

circumstances of this case. See id. TCRC's motion to quash should therefore be denied on this basis alone.

### B. The Rosol Plaintiffs' Counsel Cannot Claim Privilege Over The Documents Sought In The Subpoena.

Although the bases of TCRC's assertion of privilege are unclear, in an attempt to respond to TCRC's motion, Reynolds will assume that TCRC claims that TCRC is somehow the agent of plaintiffs' counsel in Rosol and that the materials requested in the subpoena are the work product of those attorneys. That argument fails under the basic definition of an agency.

An agency is "a fiduciary relationship, created by express or implied contract or by law, in which one party may act on behalf of another party and bind that other party by words or actions." BLACK'S LAW DICTIONARY 62 (7th ed. 1999). TCRC states that it is a "sworn enemy" of the tobacco industry (TCRC Br. at 5) and that it submits amicus briefs in appellate cases and provides "various resources to plaintiffs' attorneys suing the tobacco industry." (TCRC Br., Kevin Kroner Aff. at 1-2). TCRC, however, has alleged no fiduciary relationship between TCRC and plaintiffs' counsel in Rosol. Indeed, it has not alleged any facts that could support such a finding. The fact that TCRC and those attorneys suing tobacco companies may share public policy interest does not lead to the conclusion that TCRC is the agent of every plaintiff's counsel who attends its conference. See Townsend v. American Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997) ("The fact that these . . . people/entities may share a common interest in the outcome of a case does not make them agents for each other."). TCRC has not and cannot establish that the materials provided to attendees at the Conference were provided by TCRC as an "agent" of the various attendees. Because TCRC has established no fiduciary relationship between TCRC and plaintiffs' counsel in Rosol, TCRC's agency argument falls short. Because TCRC has failed to meet its burden in establishing that the Conference materials

8

are protected under the work product doctrine, its motion must fail. See Digital Equipment, 42 F.R.D. at 15.

Furthermore, TCRC has not even produced a list of the Conference attendees, as requested in Reynolds' subpoena. TCRC cannot credibly argue that a list of attendees is work product. TCRC also cannot make a valid claim of privilege without clarifying who attended the Conference. Although the Executive Director of TCRC, Kevin Kroner, stated that the Conference was "open only to plaintiffs' counsel, expert witnesses, and (under some circumstances) law students" (TCRC Br., Kevin Kroner Aff. at 2), Dr. Kyriakoudes stated that there were "some public health people, psychologists" who attended the Conference. See Kyriakoudes dep. at 17, Tab 8 to Kessler Aff. The President of TCRC and the Chairman of TPLP, Professor Richard Daynard, told Dr. Kyriakoudes that there "would be a mix of lawyers and public health people" at the Conference.[4] Id. at 19. Dr. Kyriakoudes was also told that United States government officials attended the Conference; he even saw plaintiffs' counsel's wife when he gave his presentation. Id. at 18-19. Contrary to TCRC's assertions, the Conference plainly was not a "private gathering." (TCRC Br. at 4). In fact, TCRC's website states that attorneys who attend the Conference may apply for CLE credit for their participation.[5] Based on the above record, it appears that virtually everyone was free to attend the Conference, with the exception of tobacco company employees. Accordingly, TCRC's argument that materials from such a Conference are work product borders on the absurd. Moreover, even if the Conference materials could qualify as work product, TCRC waived any alleged work product

---

[4] At his deposition, Mr. Johnson also stated that "there were healthcare professionals" in attendance at the Conference. See Johnson dep. at 64, Tab 7 to Kessler Aff.

[5] See Tab 5 to Kessler Aff. ("CLE Credit: Attorneys may apply for CLE credit in their own states. . . . After the conference, participants may request a receipt/certificate of attendance by emailing" the Conference.).

9

privilege by intentionally offering its materials, not to a select group of attorneys, but to a wide assortment of attendees, many of whom were not involved in any type of litigation.

Finally, to the extent TCRC relies on statements by plaintiffs' counsel in Rosol to support its position that the Conference materials are protected by the work product doctrine, this argument also fails. TCRC points to a letter dated December 10, 2003, which was sent to Reynolds' counsel by plaintiffs' counsel, David J. Darrell. In that letter, Mr. Darrell stated that the Conference materials requested by Reynolds in Rosol were work product and that plaintiffs "object[ed] to producing any materials allegedly received by Dr. Feingold's office from the conference." See Tab 10 to Kessler Aff. That new position, however, directly conflicts with the statements by plaintiffs' counsel at Dr. Feingold's deposition. At Dr. Feingold's deposition, plaintiffs' counsel indicated that Reynolds could obtain the conference materials "simply by subpoenaing them from [Professor Richard] Daynard" because plaintiffs' counsel did not think they were "proprietary." See Feingold dep. at 55, Tab 6 of Kessler Aff. It is clear from plaintiffs' counsel's own statements in Rosol that the Conference materials are not protected work product. For each of these reasons, TCRC's motion to quash should be denied.

C.  **Even Assuming The Conference Materials Were Protected Work Product At Some Point, TCRC and Plaintiffs' Counsel In Rosol Each Separately Waived Any Such Privilege.**

Even if the Conference materials were somehow protected by the work product doctrine, which they plainly are not, plaintiffs' counsel in Rosol waived any such privilege by failing to assert the privilege at the time of Dr. Feingold's deposition and by taking the position that the materials provided by the Conference were not "proprietary." Plaintiffs' counsel also waived any alleged work product privilege when counsel made no objection to the experts providing Reynolds with the materials the experts themselves created and presented at the Conference. See Wells v. Liddy, 37 Fed. Appx. 53, 65 (4th Cir. 2002) ("The proponent of the attorney-client and

work product privileges has the burden of establishing that he has not waived them."). To the extent plaintiffs' counsel later sent a letter to Reynolds claiming that plaintiffs' counsel considered the materials provided by the Conference to be privileged, that letter is irrelevant to the issue before this Court. See United States v. Nobles, 422 U.S. 225, 239 (1975) ("The privilege derived from the work product doctrine is not absolute. Like other qualified privileges, it may be waived."); Pamida, Inc. v. E.S. Originals, 281 F.3d 726, 732 (8th Cir. 2002) ("[T]he Court must not only look at whether [the party] intended to waive the privilege, but also whether the interests of fairness and consistency mandate a finding of waiver. 'When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way.'") (internal citations omitted). Thus TCRC's motion to quash should be denied on this basis as well.

In addition to the waiver by plaintiffs' counsel in Rosol, TCRC's President, Professor Daynard, also waived any work product privilege that might have existed. Before his deposition, Dr. Kyriakoudes called Prof. Daynard to tell him that Reynolds had requested certain Conference materials in Dr. Kyriakoudes' notice of deposition. See Kyriakoudes dep. at 14-16, Tab 8 to Kessler Aff. When Dr. Kyriakoudes informed Prof. Daynard that he was planning on providing a Conference notebook to Reynolds, Prof. Daynard made no objections. Id. Because TCRC's president told Dr. Kyriakoudes that it was "fine" to give Reynolds one of the subpoenaed materials, any alleged work product privilege that might have existed has now been waived on this basis as well.

## IV. CONCLUSION

For the reasons set forth above, this Court should deny TCRC's motion to quash the subpoena duces tecum served on TCRC by Reynolds.

## REQUEST FOR ORAL ARGUMENT

Reynolds respectfully requests that this Court hear oral argument on TCRC's motion to quash.

Respectfully Submitted,

*/s/ Erin K. Higgins*

Erin K. Higgins (BBO #559510)
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109
Telephone:    (617) 348-8223
Facsimile:    (617) 482-6444 (fax)
E-mail:       ehiggins@ckrpf.com

Elizabeth P. Kessler
JONES DAY
41 South High Street, Suite 1900
Columbus, Ohio 43215
Telephone:    614-469-3939
Facsimile:    614-461-4198

ATTORNEYS FOR DEFENDANT
R.J. REYNOLDS TOBACCO COMPANY

Date:   January 5, 2004

191278.1

# CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

COUNSELLORS AT LAW

| | | |
|---|---|---|
| THOMAS E. PEISCH<br>BOB B. ROSENTHAL<br>JAMES F. KAVANAUGH, JR.<br>RUSSELL F. CONN<br>GEORGE M. FORD<br>JAMES B. PELOQUIN<br>BARRY E. GOLD<br>THOMAS J. GALLITANO<br>CHRISTOPHER J. PETRINI<br>JAMES GRAY WAGNER<br>ERIN K. HIGGINS<br>STEPHEN S. CHURCHILL<br>STEVEN E. GURDIN | Ten Post Office Square, Boston, Massachusetts 02109<br><br>Tel: (617) 482-8200<br><br>Fax: (617) 482-6444<br><br>———————<br><br>WRITER'S DIRECT DIAL: (617) 348-8225<br>E-MAIL: EHIGGINS@CKRPF.COM<br><br>January 5, 2004 | MICHAEL T. SULLIVAN<br>KURT . FLIEGAUF<br>RONA D M. JACOBS<br>CARC A. STARKEY<br>JENNI ER M. NORTON<br>JA P. YMONDS<br>SARA GOODMAN<br>CHRI ENA M. VITKOVICH<br>MICH L R. BERNARDO<br>FAUCI<br>JOHA A L. MATLOFF<br>AMY STEWART<br>BETH NUZZO<br>MELIS J. RICHARD |

**BY HAND**

Civil Clerk's Office
United States District Court
 for the District of Massachusetts
1 Courthouse Way
Boston, MA 02210

RE:  Estate of Janet G. Rosol v. R.J. Reynolds Tobacco Co.
 <u>Civil Action No. 03-MC-10408-RGS</u>

Dear Sir/Madam:

Enclosed for filing please find the following:

- Defendant R.J. Reynolds Tobacco Company's Opposition to Tobacco Contro Research Center, Inc.'s Motion to Quash Subpoena Duces Tecum.

Please note that R.J. Reynolds has requested that the Court hear argument on this motion. Thank you for your attention to this matter.

Very truly yours,

Erin K. Higgins

EKH/cew/6746-090
Enclosure
cc:  Jeffrey S. Stern, Esq. (by hand) (w/encl.)
 Elizabeth P. Kessler, Esq. (w/encl.)
 E. Ralph Walker, Esq. (w/encl.)